RUSSELL LO PICCOLO *et al.*, Plaintiffs-Appellants, *v.* THE DEPARTMENT OF REGISTRATION & EDUCATION *et al.*, Defendants-Appellees.

(No. 55833;

First District—May 16, 1972.

1078

Sheldon Belofsky, of Chicago, for appellants.

William J. Scott, Attorney General, of Springfield, (Francis T. Crowe, A. Zola Groves, and Herman R. Tavins, Assistant Attorneys General, of counsel,) for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

On December 22, 1969, a complaint was filed with the Illinois Department of Registration and Education, alleging that plaintiffs-appellants had engaged in fraudulent real estate practices in the course of a 1968 real estate transaction. The complainant, Mrs. Mildred James, accused plaintiffs of suppressing an F.H.A. appraisal, of misrepresenting the true value of certain property and of acting on behalf of more than one party to the transaction. The Real Estate Examining Committee of the Department of Registration and Education conducted a hearing on the complaint, issued findings and made recommendations to the Director of the Department. Acting upon these recommendations, the Director revoked the Certificate of Registration of Russell Lo Piccolo as a real estate broker and of Kalman Goldberg as a real estate salesman. The Director's action was appealed to the Circuit Court pursuant to the Administrative Review Act.[1] This appeal is taken from the order of the

---

[1] Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*

Circuit Court denying plaintiffs' request for a change of venue and affirming the revocation order of the Director of Registration and Education. Plaintiffs have made four contentions: (1) that the Committee erred in drawing conclusions having no foundation in the Committee's specific findings of fact; (2) that the conclusions of the Real Estate Examining Committee were contrary to the manifest weight of the evidence; (3) that the Committee erred in restricting the cross-examination of the complainant; and (4) that the Circuit Court erred in denying plaintiffs' request for a change of venue. These contentions require a review of the testimony presented before the Real Estate Examining Committee.

Mrs. Mildred James testified as follows: In 1948 she purchased a building at 4816 West Kinzie, Chicago, for the price of $13,500. At the time the building was a rooming house, containing 13 rooms and a basement flat. Between 1965 and 1967 $2,000 was expended in deconverting the building into a two-flat, as ordered by a citation issued by the Chicago Commissioner of Buildings. On April 12, 1968, Mrs. James signed an exclusive listing with Martin Cohen of Sky Realty Company to sell the West Kinzie property for approximately $8,000. She paid a fee of $35 to secure an F.H.A. appraisal. Mrs. James met again with Sky Realty personnel some time in mid-April. On that occasion she was visited at her Cicero home by Mr. Lo Piccolo, a Sky realty broker, and Mr. Goldberg, a Sky realty salesman. Mrs. James could recall none of the conversation from that meeting. The next meeting occurred on April 30, 1968, in front of the West Kinzie property and was again attended by Mrs. James, Mr. Lo Piccolo and Mr. Goldberg. At that meeting, Mrs. James was advised by Mr. LoPiccolo that her property was worth only $2200, "because you are by the railroad tracks, and the colored is on the other side about a block away." He added that he knew of a Mr. Patterson who was presently willing to purchase the property at that price. Mrs. James agreed to sell and signed the prepared contract which listed Mr. Patterson as the purchaser. The closing occurred on June 1, 1968. At no time during this transaction was Mrs. James represented by an attorney. At no time was she informed that Mr. Patterson was serving as a nominee for the real purchasers, Mr. Lo Piccolo and Mr. Goldberg. At no time was she informed of the contents of the F.H.A appraisal. On cross-examination Mrs. James admitted that legal actions had been filed against her West Kinzie property because of building code violations, but she asserted her belief that all violations had been remedied before the property was sold. She also denied ever engaging in telephone conversations with Mr. Lo Piccolo.

Russell Lo Piccolo testified in his own behalf and as an adverse wit-

ness under Section 60 of the Civil Practice Act.[2] He stated that, although he had several prior telephone conversations with Mrs. James, he did not meet her personally until April 30, 1968, at her residence in Cicero. On the basis of their telephone conversations, he had viewed the West Kinzie property on April 20, 1968, and had found it in need of substantial repairs. Mr. Lo Piccolo testified that at the April 30th meeting he fully informed Mrs. James that he and Mr. Goldberg were interested in purchasing the property for $2000 and that, for personal reasons, they intended to use a Mr. Patterson as a nominee. He identified and admitted receiving an F.H.A. appraisal for the West Kinzie property and a cover letter, dated May 23, 1968. The stated appraisal value was $19,000, conditioned on compliance with pertinent building codes. His testimony does not reflect whether this information was ever communicated to Mrs. James. The transaction was consummated at a purchase price of $2200 and the two purchasers took beneficial interests under a land trust. Repairs costing approximately $8000 were thereafter undertaken, although no evidentiary support for that figure was introduced. The property was resold in November, 1968 for $19,000.

Kalman Goldberg also testified in his behalf and as an adverse witness. He corroborated the substance of Russell Lo Piccolo's testimony.

Frank Barnes, Chief of Code Enforcement for the Chicago Department of Buildings, testified as follows: Prior to June, 1968 the City of Chicago had instituted three civil actions against the building located at 4816 West Kinzie. The first action, filed March 11, 1964, sought deconversion of the building from a three-flat into a two-flat. The required deconversion was completed on August 4, 1966, and the action was dismissed the same year. The second action, filed February 24, 1966, was a complaint for injunction, demolition and other relief and alleged numerous building code violations. Mrs. James took out building permits, apparently in response to this complaint. Mr. Barnes was unaware of the ultimate disposition of the case, but complainant's Exhibit # 6 includes an order, filed June 6, 1968, dismissing the action *nunc pro tunc* as of May 24, 1967. The third action, filed March 27, 1968, charged seven building code violations. The alleged violations were minor in nature, and their correction did not necessitate the issuance of a building permit. Inspection of the premises on April 22, 1968, revealed that two of the violations had been remedied. This action was pending at the time Mrs. James sold her property.

The Real Estate Examining Committee, after hearing the above evi-

---

[2] Ill. Rev. Stat. 1971, ch. 110, par. 60.

dence and making specific findings of fact, concluded that respondents Lo Piccolo and Goldberg were in violation of the following sections of the Illinois Real Estate Brokers and Salesmen law: Section 8 (e) 5, in that, they acted for more than one party to a transaction without the knowledge of all the parties involved; Section 8 (e) 7, in that, they failed to account for documents coming into their possession which belonged to the complainant in this case (this conclusion was reversed by the Circuit Court); Section 8 (e) 11, in that, they demonstrated unworthiness to act as real estate brokers or salesmen in such manner as to safeguard the interest of the public and Section 8(e) 14, in that, the conduct employed by them was of such a nature as to constitute dishonest dealing.

OPINION

■■ Plaintiffs' first contention is that a reversal is warranted by the absence of specific findings of fact to support the conclusion of the Real Estate Examining Committee that plaintiffs acted for more than one party to this transaction, without the knowledge of all the parties involved. This argument overlooks the fact that the statute governing hearings before the Committee does not require specific findings of fact. (Ill. Rev. Stat. 1971, ch. 114½, par. 8d.) (Compare with Ill. Rev. Stat. 1971, ch. 111⅔, par. 69). We perceive no reason for judicially imposing such a procedural requirement. Plaintiffs have alleged no prejudice, and we are content to review the record of the proceedings without the benefit of specific findings of fact. Therefore, the inadequacy of such findings is not ground for reversal. *Davis v. Board of Fire and Police Comm'rs,* 37 Ill.App.2d 158, 185 N.E.2d 281; *Massey v. Fire and Police Comm'n,* 26 Ill.App.2d 147, 167 N.E.2d 810.

■■ Plaintiffs' second contention is that the conclusions of the Committee were not supported by the manifest weight of the evidence. Our review of the evidentiary basis for the Committee's conclusions should be subject to the same limitations which pertain to review of administrative findings of fact. Such findings are deemed *prima facie* true and correct. The courts will not reweigh evidence or make independent determinations of fact so long as the findings of the agency are based on substantial evidence. (*Bruce v. Dept. of Registration and Education,* 26 Ill.2d 612, 187 N.E.2d 711.) Although the record at bar reflects a stark conflict in evidence bearing on the issue of disclosure, this alone is insufficient to warrant holding that the conclusion relevant thereto was erroneous. (*Fischer v. Industrial Com.,* 408 Ill. 115, 96 N.E.2d 478.) The conflicting testimony accentuated the importance of the credibility of the witnesses, and determinations of credibility are for the original agency. (*Davis v. Board of Fire and Police Comm'rs, supra.*) Plaintiffs admit that the testimony of Mrs. James concerning alleged misstatements and non-

disclosures, if believed, would support all the unreversed findings. We do not believe that her testimony was sufficiently impeached as to warrant our preemption of the agency's implicit assessment of credibility. Its conclusions were not contrary to the manifest weight of the evidence.

■■ Plaintiffs' third contention is that they were prejudiced by the ruling of the Committee's technical advisor, which precluded cross-examination of Mrs. James regarding the nature of the legal assistance she received from members of her community. We need not determine whether this ruling could withstand a strict application of the rules of evidence, for the Administrative Review Act does not prescribe such a rigorous review. Failure of an administrative agency to observe technical rules of evidence is not ground for reversal, unless the failure "materially affected the rights of any party and resulted in substantial injustice to him." (Ill. Rev. Stat. 1971, ch. 110, par. 275(2).) We believe that whatever prejudice plaintiffs might have incurred from their inability to fully cross-examine Mrs. James would not meet this standard.

Plaintiffs' final contention is that it was error for the Circuit Court to deny their motion for a change of venue. The circumstances surrounding the Court's ruling were as follows: On September 14, 1970, the Director of the Illinois Department of Registration and Education revoked the real estate brokers license of Russell Lo Piccolo and the real estate salesman's license of Kalman Goldberg. On October 8, 1970, plaintiffs filed a complaint for administrative review in the Circuit Court, seeking immediate relief in the form of a stay of the revocation order and ultimate relief in the form of a reversal of that order. The Circuit Court entered an order on October 13, 1970, granting plaintiffs' request for a stay of revocation "until further order of the Court." The stay order was entered prior to the Circuit Court's opportunity to review the record of the proceedings held before the Real Estate Examining Committee. Upon a review of that record, however, the Court, on its own motion and without notice to the parties, entered a supplementary order, vacating the stay order and expressing the opinion that it had been "improvidently granted." This vacature order was filed on January 8, 1971. On January 11, 1971, counsel for plaintiffs presented to the Circuit Court for a petition for a change of venue, which was denied.

■■ A petition for a change of venue must be made at the earliest practicable moment. (*Ossey v. Retail Clerks' Union,* 326 Ill. 405, 158 N.E. 162.) After a trial has commenced or is about to be commenced it is too late to grant a petition for a change of venue. (*Ostro, Inc. v. Boydston Bros., Inc.,* 323 Ill.App. 137, 54 N.E.2d 742.) A petition is also untimely if it is preceded by rulings on substantive issues. (*People v. Lawrence,* 29 Ill.2d 426, 194 N.E.2d 337.) This rule reflects the conclusion

that it would be improper to allow a litigant to test the predilections of the trial court during pretrial proceedings, and then receive a change of venue as of right after an ominous ruling. (*Comm'rs of Drainage Dist. No. 1 v. Goembel,* 383 Ill. 323, 50 N.E.2d 444.) It is an abuse of the Venue Act to attempt to use it to avoid an expected adverse determination. (*Paramount Paper Tube Corp. v. Capital Engineering & Mfg. Co.,* 11 Ill.App.2d 456, 138 N.E.2d 81.) Accordingly, it has been held that a petition presented after a denial of a motion to strike the complaint is untimely, *Swanson v. Randall,* 30 Ill.2d 194, 195 N.E.2d 656; so also after a denial of a motion to dissolve a temporary injunction. (*Board of Junior College v. Cook County Teachers Union,* 126 Ill.App.2d 418, 262 N.E.2d 125.) In the case at bar, we similarly believe that the Circuit Court, in vacating its own stay order upon a subsequent investigation of the record, made a ruling of substance which manifested a judicial disposition contrary to the interests of plaintiffs. The petition for a change of venue came after the vacature order and, according to plaintiffs' brief, constituted a reaction to the lack of judicial dispassion allegedly reflected by that order. Under these circumstances we hold that the petition was untimely and was properly denied.

In view of the foregoing we affirm the order of the Circuit Court.

Judgment affirmed.

SCHWARTZ and LEIGHTON, JJ., concur.