*In re* ESTATE OF EDWARD JOHN BUEHNEMANN, Deceased—(VELMA BUEH-NEMANN, Petitioner-Appellee, *v.* ALICE L. RHODES *et al.*, Administrators-Appellants.)

(No. 74-163;

Fifth District—February 19, 1975.

1004

Earl L. Vuagniaux, of Edwardsville, for appellants.

Gerald J. McGivern, of Wiseman, Shaikewitz, McGivern, Bacus & Wahl, of Alton, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is an appeal from the judgment of the Circuit Court of Madison County awarding petitioner-appellee, Velma Buehnemann, $5,000 as the surviving spouse of Edward John Buehnemann, pursuant to the Probate Act (Ill. Rev. Stat. 1973, ch. 3, par. 178).

Alice Rhodes and Albert Buehnemann, appellants in this cause, were appointed co-administrators of his estate. Appellee filed her petition for a surviving spouse's award. Appellants served notice of taking of petitioner's deposition. Petitioner filed a motion to strike the notice or, in the alternative, for a protective order on the grounds that the circumstances of the death of John Buehnemann were under investigation by Madison County law enforcement agencies and invoked her rights under the fifth and fourteenth amendments to the Constitution of the United States. Petitioner alleged that she sought only the minimum award of $5,000. Appellants filed a motion to dismiss the petition for surviving-spouse award for failure to comply with the notice of deposition and filed affirmative defenses to the petition, namely that petitioner "maliciously and feloniously stabbed the decedent, Edward John Buehnemann, thereby causing his death," and that the matter would be presented to the Madison County Grand Jury.

A hearing was held on all pending motions on February 14, 1974, before the Honorable Merlin G. Hiscott. Arguments of counsel were heard, but no evidence was taken. Petitioner stated of record that she would honor the deposition notice but would refuse to answer questions. On that basis, the court found it unnecessary to rule on the motion to strike or for a protective order. The court further ruled that absent conviction for murder or voluntary manslaughter, petitioner was entitled to the statutory minimum award of $5,000, thus negating the need for evidence. The motion to dismiss was denied, and the award was granted. The court asked that a written order be submitted, and the docket

entries show "agreed order to be submitted." Appellants now reject the "agreed order" which stated concisely that which had been decided at the hearing, but which contained a provision for the disposition of real and personal property stating that petitioner relinquished possession of the property "consistent with the homestead rights in said property."

■■ At the outset, it should be noted that there is no evidence before this court of any wrongdoing on the part of petitioner in the circumstances surrounding the death of her husband. Counsel for appellants admitted at oral argument that the case had never been submitted to the grand jury. Thus, petitioner has never been charged with murder, let alone convicted. Section 178 of the Probate Act (Ill. Rev. Stat. 1973, ch. 3, par. 178) makes the minimum surviving spouse's award automatic. The right to the award is qualified by sections 182 and 15(a). Section 182 provides that a provision in a testator's will specifying that the will is in lieu of the award extinguishes it where the spouse does not renounce the will. Section 15(a) states that one "convicted of the murder" of the decedent cannot acquire any interest in the estate. The spouse may, of course, waive her right to the award. The case at bar involves only section 15(a).

■■ Some explanation of the history of section 15(a) appears in order. In 1914, the supreme court, in *Wall v. Pfanschmidt*, 265 Ill. 180, 106 N.E. 785, held that the Probate Act superseded the common law. The statute did not contain a "murdered ancestor" provision. The court held that in the absence of a statute forbidding such inheritance, no restriction could be read into the statute from common-law principles. The statute was amended in 1939 to include a precursor of the present section 15(a) (Ill. Rev. Stat. 1939, ch. 3, par. 167.) This amendment did not codify or revive all common-law equity principles affecting inheritances, but specifically added a bar for those convicted of murder. (*Bradley v. Fox*, 7 Ill.2d 106, 129 N.E.2d 699 (1955); *Seipel v. State Employees' Retirement System*, 8 Ill.App.3d 182, 289 N.E.2d 288 (1972); *Wilson v. Board of Trustees*, 108 Ill.App.2d 210, 246 N.E.2d 701 (1969).) Appellants place unfounded reliance on *Illinois Bankers Life Association v. Collins*, 341 Ill. 548, 173 N.E. 465 (1930). There, the question was to whom should be paid benefits of an insurance policy on the life of a woman "murdered" by her husband, who "shortly thereafter" took his own life. Appellants cite this case as authority that inheritance may be barred even without conviction. The court held that the life insurance policy, as with all contracts, included in its terms all requirements of existing law and public policy, including the maxim that a wrongdoer should not profit by his transgression. The court, however, specifically distinguished the Probate Act, which at that time was unamended and

interpreted by the *Wall* decision as allowing murderers to inherit. The subsequent amendment to the Probate Act renders the distinction no less compelling. We will not enlarge upon the terms of the statute where they are clear and unambiguous. *Droste v. Kerner*, 34 Ill.2d 495, 217 N.E.2d 73 (1966); *Carnahan v. McKinley*, 80 Ill.App.2d 318, 224 N.E.2d 297 (1967).

■■ Appellants ask us to apply the "clean hands" doctrine, to hold that one under suspicion of foul play should be forced to litigate his innocence or guilt in the probate court. This we cannot do. The statute is specific. The only requirements placed on the widow are that she be surviving and a spouse. This was uncontroverted by appellants.

Appellants' lengthy arguments about the force of the common law and public policy that "no man may profit by his own wrongdoing" miscomprehend the basic tenet of criminal law that a person is presumed innocent until proven guilty in a court of law pursuant to constitutional and statutory process. Civil "murder" does not exist and did not exist under common law. "Murder" under the law is both a term of art and a legal conclusion. Were the statute to read "no murderer" shall inherit, the situation would be the same. But the legislature left no doubt as to its intention. Only the conviction of murder (and perhaps, without deciding, voluntary manslaughter) would deprive the widow of her award. Appellants seem to imply that were they allowed to put on evidence in the trial court, they could have proved that murder was committed. But even assuming that irrefutable evidence existed, appellants could not, in the circuit court in a probate matter, have met the statutory requirement for deprivation of the award. To allow the attachment of the label "murderer" to a citizen in an equitable action devoid of established criminal process, even without the resulting imposition of criminal penalties, would be a gross deviation from our heritage. If petitioner be a wrongdoer, the responsibility of citizens with evidence of such transgression is to set the process of criminal prosecution in motion, not to subvert it. Even were the Probate Act ambiguous, we could not countenance a policy of civil trials of such serious charges. As we have noted, however, the Act is not unclear.

Appellants also contend that the reference to homestead rights in the order of the trial court was error. That question is not before us. The court said nothing which is not both logical and the law. It did not set forth what homestead rights rested in the petitioner or when or how they could be enforced. Nothing with regard to the widow's homestead rights has been decided.

■■ Since, as we have noted, the minimum award under the Probate Act is automatic and nondiscretionary, the court was not required to

hear evidence. Appellants' claim that the court should have dismissed the petition for failure to honor the notice of deposition is untenable. The only facts necessary or admissible here were those required to prove that petitioner was a surviving spouse. These facts were admitted by appellants. No other facts were relevant. While petitioner's refusal to submit to questioning might have bearing on some other action, it has none here. Petitioner was not required to furnish information for a suit not yet filed.

For the foregoing reasons, the judgment of the Circuit Court of Madison County is affirmed.

Affirmed.

EBERSPACHER and G. MORAN, JJ., concur.